UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARYN MCCAULEY,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>OFFICER J. SINNOTT, UNKNOWN HARVEY POLICE OFFICER, and the CITY OF HARVEY,<br><br>　　　　Defendants. | No. 13 CV 522<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daryn McCauley ("Plaintiff") filed a four-count amended complaint against Defendants Officer J. Sinnott, Star No. 969, an Unknown Harvey Police Officer, and the City of Harvey ("Defendants") alleging use of excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 and state law claims for battery, indemnification, and respondeat superior. Defendants now move for summary judgment on all counts under Fed. R. Civ. P. 56. For the following reasons, Defendants' motion for summary judgment is denied in its entirety.

### I. STATEMENT OF FACTS

On May 20, 2012, between 8 and 9 a.m., McCauley and his girlfriend, Asia Israel ("Israel") got into an argument while at the home of Israel's mother at 14921 Ashland Avenue. The argument between McCauley and Israel caused McCauley to leave the premises. McCauley, who did not have a valid driver's license at the time, drove away in a tan 1997 Oldsmobile Bravada which was titled to Israel. Israel called the police to report that McCauley had taken her vehicle, and Officers Sinnott and Passamentt ("Officers") were dispatched to 14921 Ashland

1

Avenue. Upon arriving at the location, the Officers noticed Israel standing in front of her house, approached Israel, and spoke with her regarding her call to the police.

Israel informed Sinnott and Passamentt that she and her boyfriend were in an argument, he had taken her vehicle, and she wanted it back. Israel told Sinnott and Passamentt that she did not want McCauley to go to jail. As Israel was speaking with the Officers, McCauley returned with Israel's vehicle. McCauley drove past the Officers and parked at his friend Brandon's driveway across the street from 14921 Ashland Avenue. Upon parking, McCauley immediately exited the vehicle and began walking towards Israel and the Officers. Sinnott testified that he knew it was McCauley driving up in the car and could see into the vehicle that McCauley wasn't wearing a seatbelt. McCauley and the officers both walked towards each other.

Hereafter, there are small but significant factual disputes about what occurred next. McCauley testified that there were around fifteen people outside in the neighborhood during this time. McCauley testified that the Officers spoke to McCauley for a minute, told them to keep it down, and were about to leave. McCauley and Israel testified that Sinnott told McCauley to go inside; McCauley refused and replied that he was "grown" and didn't have to go in the house. McCauley, instead, went to Brandon's porch. Sinnott and Passamentt went back to their police car and started to leave. McCauley shouted something to Israel across the street and Sinnott quickly got out of the car and walked towards McCauley. McCauley put his hands in the air in surrender. Sinnott grabbed his arm and never lost hold of it, even when McCauley slightly pulled away and stated that it was not necessary to grab his arm since he was not resisting. Sinnott maneuvered McCauley to the ground on his face, pulled his arm until it popped. Plaintiff suffered a fractured humeral head and ruptured tendons in his shoulder. Sinnott and Passamentt continued to use force, pulling him by his hair up off of the ground and into the vehicle.

2

Sinnott and Passamentt claim that, after McCauley and the Officers approached each other, the Officers asked for McCauley's name and date of birth and went back to the squad car to check McCauley's information on LEADS. The LEADS check revealed that McCauley did not have a license. During this time, McCauley and Israel were yelling at each other. Sinnott got out of the squad car, walked toward McCauley, and told McCauley that he was going to be placed under arrest. The Officers claim that McCauley resisted by not putting his hands behind his back and, while Sinnott held McCauley's wrist in his grasp, moved his arm away. The Officers agreed that Sinnott never lost his grip on McCauley's wrist. Sinnott and Passamentt, together, brought McCauley to the ground using a "take-down" maneuver or "arm bar" technique to complete the arrest. The Officers testified that he did not recall hearing a "pop" and pulled McCauley up to his feet by lifting him from under his arms.

## II. LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir.2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir.2002).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d. 265 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003)(citing *Lujan v. Nat'l Wildfire Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir.2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the non-moving party's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir.2002).

### III. DISCUSSION

A.   Count I: Excessive Force Claim

Plaintiff and Defendants dispute whether Officers Sinnott and Passamentt used reasonable and justified force against McCauley under the Fourth Amendment's objective reasonableness standard during the course of his arrest. Under *Graham v. Connor*, three factors are relevant in determining the reasonableness of force: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. 490 U.S. 386, 396 (1989). The reasonableness of a particular use of force is an objective inquiry and must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id*. at 396-97.

Defendants were dispatched to the scene of a non-violent domestic dispute. Even according to Defendants' less favorable version of the story, Plaintiff approached Sinnott and Passamentt immediately after returning and cooperatively spoke with the officers, providing his

4

name and date of birth. Upon checking his records in the LEAD system, the Officers charged Plaintiff with two minor, non-violent traffic offenses: (1) driving without a seat belt and (2) driving without a driver's license. Sinnott claimed that he notified McCauley that he was being placed under arrest. Plaintiff submits that he did not resist the officers and, consequently, no force was reasonable. Plaintiff argues that, even if Plaintiff nudged his arm to push Officer Sinnott's hand away, as claimed by Defendants, the force used by Defendants was excessive. Moreover, Sinnott concedes that he never lost grip of McCauley's wrist, but still determined he needed to use a take-down maneuver because McCauley was resisting arrest. Plaintiff testified that Sinnott forced Plaintiff's arm up toward his head, causing Plaintiff's shoulder to "pop" and resulting in a fractured humeral head and ruptured tendons. Defendants and Plaintiff additionally dispute the amount of force used to place McCauley in the squad car, with Plaintiff claiming that Defendants pulled him by the hair from the ground and into the squad car.

The extent of the alleged resistance by McCauley and, consequently, the level of force that the officers could reasonably use are the core of this claim and material questions of fact for a jury to decide. Defendants' motion for summary judgment on Count I is denied.

B.    Count II: Battery

Under Illinois law, an actor commits a battery if: (1) he acts intending to cause a harmful or offensive contact with another person, or an imminent apprehension of such a contact, and (2) a harmful contact with another person directly or indirectly results. Rest. (Second) Torts § 13 (1965); *McNeil v. Carter*, 318 Ill.App.3d 939 (3rd Dist. 2001). The Illinois Tort Immunity Act, however, protects public employees from liability for acts occurring in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202. Under Illinois law, a police officer is not liable for a battery committed in the

5

course of a lawful arrest "unless he acted with actual or deliberate intention to harm or with utter indifference to or conscious disregard for the safety of others." *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008).

Plaintiff alleges that the Officers' harmful contact, including pulling his arms up towards his head, caused his injuries, which included a fractured shoulder. Sinnott claims that he was not intentionally attempting to cause Plaintiff any harm and that Sinnott and Passamentt used the minimum amount of force necessary to get Plaintiff to comply with their commands. To constitute a "wanton" act, however, Defendants need not have acted with intent to cause injury; rather, Defendants must be conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury. *Kirwan v. Lincolnshire-Riverwoods Fire Protection Dist.*, Ill. App.3d 150 (2004). Here, there are remaining questions regarding Plaintiff's resistance and the level of force used by the Officers. Without knowing whether the force used was reasonable, I cannot determine whether the Officers' inflicted harm on Plaintiff with utter indifference or conscious disregard to Plaintiff's safety such that it amounted to conduct that was willful and wanton. Summary judgment on Count II is denied.

C.     Count IV: *Respondeat Superior*

Plaintiff alleges that Defendant City of Harvey is liable under a theory of *respondeat superior* for Plaintiff's state law battery claim. Under a theory of *respondeat superior*, an employer may be held vicariously liable for the tortious acts of its employees that were committed within the scope of employment. *Brown v. King*, 328 Ill. App. 3d 717, 721 (1st Dist. 2001). Without disposition of Plaintiff's Count II battery claim, Defendants' motion for summary judgment is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied in its entirety.

ENTER:

James B. Zagel
United States District Judge

DATE: October 23, 2014